SMITH, CULVER, Associate Judge.
The Appellant, Audrey McCormick, filed in the Court below, a petition for partial revocation of probate of the will of Jane K. Davenport, deceased. The Appellee, Richard G. Kent, was the executor, and a beneficiary under this will. At the conclusion of Appellant’s evidence, Appellee moved for dismissal of the petition, which motion was granted. Thereafter the Court entered its order of dismissal with prejudice, from which Appellant takes this appeal. The paragraph of the will sought to be revoked reads as follows:
“If Richard Kent, or his estate or the beneficiaries thereof shall be indebted to me in any amount at my death, whether such debt shall be evidenced by note, mortgage or otherwise, I direct and require that all such indebtedness and interest thereon be forgiven and cancelled in its entirety, it being my intention by this bequest to relieve the said Richard G. Kent and his estate and the beneficiaries thereof of any *177 and every obligation to repay said indebtedness or any part thereof.
“The foregoing bequest to Richard G. Kent has been made in consideration of the services he has rendered to me in taking care of my property and for the devotion and attention he has given me since the death of my husband.”
The Appellant’s ground for revocation of the above provision, as argued in her brief and before this Court, is that the evidence establishes that Appellee exercised undue influence on the decedent resulting in the making of the will of which it is a part. The greater portion of the pertinent evidence herein consists of the testimony of the Appellee given upon being called by Appellant as an adverse witness. A brief summary of this evidence follows.
The Appellee first met decedent and her husband in St. Petersburg, Florida, in 1956 or 1957. Thereafter, Appellee, being engaged in the real estate business, sold them a lot. When they moved to Florida, Ap-pellee, acting as a broker, sold them a house. Decedent’s husband and Appellee became good friends, and Appellee saw decedent from time to time. On July 6, 1960, decedent executed a will naming Appellee as executor, but not including him as a beneficiary. On February 7, 1961, decedent’s husband died suddenly. Immediately thereafter Appellee took over the business affairs of the decedent, Jane K. Davenport, including taking charge of her bank accounts. He wrote checks for her expenses including mortgage payments, nurses, and doctor bills. He acted in an advisory capacity as to the selection of her physician, for nursing care, and for hospitalization when required. Fie also wrote the checks for utility bills and incidental expenses on her property. In May or June of 1961 Appellee sold decedent’s car for approximately $1,400.00 and deposited the funds received in his own account. On July 15, 1961, Appellee borrowed $5,000.00 from decedent giving her his unsecured five-year note with 6% interest. Appellee used this money to reduce a second mortgage on property he owned. At the end of September 1961 Appellee presented an accounting to the decedent and advised her that he could no longer handle her affairs. She was upset about this, and offered to will her entire estate to the Appellee if he would continue to take care of her business and property. Appellee declined this offer but suggested a bequest substantially as that actually made. Appellee then contacted an attorney to see decedent about changing her will. The attorney and the Appellee rode together to the place where decedent was staying, where the attorney conferred with her. The Appellee was not present in the room at the time, but was on the premises. Later, when the will was executed, Appellee was not in the room, but was on the premises. Just before Christmas, 1961, Appellee gave decedent two unsecured five-year notes in the amount of $1,200.00 each. It is not clear as to just why this came about other than that Appellee used $2,400.-00 from decedent’s funds, in addition to the $5,000.00 cash loan previously mentioned. The decedent, Jane K. Davenport, died on February 16, 1962. From the time of her husband’s death until her own, she had been hospitalized on four occasions.
On appeal, the findings of the probate Judge are to be given the same weight as the findings of any other trier of fact. They will not be disturbed on appeal unless there was a palpable misconception of fact or manifest misapprehension or misapplication of law. In re Winslow’s Estate, Fla.App., 147 So.2d 613. In the instant case, there are no substantial conflicts in the evidence, since only the Appellant’s case was presented. We have to determine whether or not there has been a misapplication of the law. A second rule is that when a substantial beneficiary, who occupied a confidential relationship with the testator, was active in the procurement of a will a presumption of fact will arise that the will is a result of undue influence and the burden will be upon the *178 beneficiary to show that such influence was not exercised. Zinnser v. Gregory, Fla., 77 So.2d 611. In re Joiner’s Estate, Fla., 156 So.2d 161.
Undue influence can seldom if ever be established by direct evidence but may be shown by its results. It may be proven by indirect evidence of acts and circumstances. It can scarcely be questioned that Appellee enjoyed a confidential relationship with the deceased. The uncon-troverted evidence of the events which took place, including his connection with the procurement of the will in question gives rise to the presumption of undue influence. We hold that the Court below erred in that it did not give effect to the presumption, and require Appellee to go forward with proof showing the absence of undue influence on his part.
Reversed and remanded for further proceedings consistent herewith.
SHANNON, Acting C. J., and SMITH, J., concur.